NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GEOFFREY A. WILLIAMS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2025-1955

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-00413-LAS, Senior Judge Loren A. Smith.

---

Decided:  March 10, 2026

---

GEOFFREY ALAN WILLIAMS, Waco, TX, pro se.

SAMUEL PATRICK JONES, Appellate Section, Tax Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by MICHAEL J. HAUNGS.

---

Before TARANTO, CLEVENGER, and STOLL, *Circuit Judges*.

PER CURIAM.

The Internal Revenue Service determined that Geoffrey Williams owed income taxes for tax years 2006 and 2010, plus interest and penalties, and it levied on his bank account to satisfy the obligations in part. Mr. Williams, after unsuccessfully challenging the levy in an IRS administrative hearing, paid the unpaid assessed amount, and he then sent the IRS letters asserting that he owed no tax for the relevant years and demanding a full refund. The IRS requested that he submit the demands in the proper format. Mr. Williams thereupon brought suit in the United States Court of Federal Claims (Claims Court), alleging entitlement to a refund pursuant to 26 U.S.C. [I.R.C.] § 7422 and to damages for violations of I.R.C. § 7433. The government moved to dismiss the complaint for lack of subject-matter jurisdiction, and the Claims Court granted the motion. Mr. Williams appeals. We affirm for the reasons discussed below.

I

We take the facts of this case from the allegations in Mr. Williams's operative complaint in the Claims Court, supplemented by certain details added by Mr. Williams and the government that do not contradict the operative complaint. Mr. Williams did not file federal income tax returns for tax years 2006 and 2010. Amended Complaint, *Williams v. United States*, No. 1:24-cv-00413 (Fed. Cl. Sept. 30, 2024), ECF No. 14 at 2 (Complaint); S. Appx. 13.[1] As a result, in 2012, the IRS prepared substitute tax returns for him, which indicated that Mr. Williams owed $2,982 in tax for 2006 and $22,789 for 2010. S. Appx. 21–22, 34, 37; *see* Complaint at 2–3; *see also* I.R.C. § 6020(b)(1) (authorizing the Secretary of the Treasury, when "any person fails to make any return required by any internal

---

[1]    S. Appx. refers to the appendix submitted with the government's brief. A copy of the amended complaint with the attached exhibits is at S. Appx. 12–20.

revenue law or regulation," to "make such return from his own knowledge"). Over the next several years, Mr. Williams did not pay the IRS-specified amounts due, and interest and penalties accrued. S. Appx. 33–38.

In June 2020, the IRS mailed to Mr. Williams, at a Waco, Texas address, a notice stating that it had not received his tax returns for 2006 and 2010, asking that he file returns and pay any tax due, and warning that interest and penalties might also apply. Williams Informal Br. at 8;[2] Complaint at 2. Mr. Williams mailed a return-addressed response the next month, but his mailing did not include the requested tax returns or payments, and it was not received by the appropriate IRS officials. Williams Informal Br. at 9; *see* Complaint at 2. In August 2020, the IRS issued a notice to Mr. Williams of its intent to levy on his assets for unpaid tax, interest, and penalties, which now totaled more than $50,000. *See* Complaint at 2–3; S. Appx. 21–22, 33–38. But the IRS sent the notice, not to Mr. Williams's Waco address, but to a Dallas post office box it had reason to associate with Mr. Williams. *See* Complaint at 2–3; S. Appx. 43. It turned out, however, that Mr. Williams no longer had access to the post office box, and the notice was returned as undeliverable. Williams Informal Br. at 10; *see* Complaint at 2; S. Appx. 43.

The following January, the IRS sent to Mr. Williams's Waco address a notice of levy, which Mr. Williams did receive. Complaint at 2. The IRS levied on his bank account the next month, seizing $11,836.86. *Id.*; *see* S. Appx. 35, 37. After contacting an IRS official to determine why he never received a notice of intent to levy, Mr. Williams requested a hearing to dispute the levy pursuant to I.R.C. § 6330. Complaint at 2; S. Appx. 42. Although Mr.

---

[2]    Mr. Williams's opening informal brief contains record materials numbered consecutively with his argument starting at page 8.

Williams's request fell well outside the 30-day statutory period following the *notice of intent* to levy for requesting a hearing, *see* I.R.C. § 6330(a)(1), (a)(3)(B), the IRS offered an "administratively equivalent hearing." S. Appx. 42; *see* Complaint at 2–3. In late 2021, Mr. Williams participated in that hearing, at which he argued, in the main, that he did not owe the assessed tax because he never received the notice of intent to levy. Complaint at 2–3; S. Appx. 42–43, 45. The IRS nevertheless sustained the levy. Complaint at 3; S. Appx. 42.

Several months later, in May 2022, Mr. Williams paid the balance of the 2006 and 2010 taxes, penalties, and interest. Complaint at 3. Then, the same month, he sent the IRS two one-page letters (the May 2022 letters), each under the header "Demand Claim for Refund," requesting the return of "taxes, interest and penalties erroneously paid under duress." *Id.* at Exs. 1–2 (capitalization altered). The May 2022 letters identified Mr. Williams by name, social security number, and his Waco street address, and they were identical except that one concerned tax year 2006 while the other concerned tax year 2010. *See id.* In each letter, Mr. Williams asserted that he "did not provide a tax return for the tax year," that "the IRS has no [a]uthority to create a substitute tax form[ ]," and that the IRS failed to follow its own procedures in giving notice of intent to levy. *Id.* (emphasis removed). He asserted that the substitute tax returns and assessed amounts were "fraudulent" and "[i]llegal," that the "[c]orrect tax" was "$0.00," and that the entire assessed amount of tax, interest, and penalties should be refunded. *Id.* (emphasis removed).

The IRS responded to Mr. Williams's refund demands in August 2022 with two near-identical letters of its own. *Id.* at Exs. 3–4. In the letters, the IRS characterized Mr. Williams's May 2022 letters as "disagreeing with" the substitute tax returns for 2006 and 2010, informed him that he would have to "request reconsideration of [the substitute tax returns] by filing [ ] original return[s] for [those]

tax period[s]," and instructed him to send a signed Form 1040 Income Tax Return for each period so that the IRS could consider his claims. *Id.*

Mr. Williams did not file the requested returns, *id.* at 2; instead, in March 2024, he sued the United States in the Claims Court for a tax refund, S. Appx. 9, soon afterwards filing the operative (amended) complaint.[3] The complaint lays out the history recounted above. *See* Complaint at 1–3. It asserts that the IRS's preparation of substitute tax returns was unauthorized and that the collection of tax based on the substitute tax returns was "fraudulent" and violated numerous provisions of the Internal Revenue Code. *Id.* at 3–5 (citing I.R.C. chs. 1, 5, 24; *id.* §§ 6020, 6203, 6330). The complaint further alleges that the IRS intentionally concealed the asserted violations "for financial gain," which was "criminal." *Id.* at 4. It demands the following relief: the return of $52,660.92; civil damages for unauthorized collections under the Internal Revenue Service Restructuring and Reform Act of 1998 § 3102(a), Pub L. No. 105-206, 112 Stat. 685, 730 (IRS Reform Act), codified in relevant part at I.R.C. § 7433; payment for time spent preparing the lawsuit; punitive damages; and interest. *Id.* at 5.

In October 2024, the government filed a motion, under Rule 12(b)(1) of the Rules of the Court of Federal Claims, to dismiss the complaint for lack of subject-matter jurisdiction. S. Appx. 21–32. It argued that the Claims Court had no jurisdiction over Mr. Williams's refund claim under the Tucker Act and I.R.C. § 7422 because the latter provision requires that a refund claim be "duly filed with the

---

[3]    The amended complaint and original complaint are substantially the same. *Compare* Complaint *with Williams v. United States*, No. 1:24-cv-00413 (Fed. Cl. Mar. 15, 2024), ECF No. 1; *see also* Government Informal Br. at 4 n.2.

Secretary" before it can be the subject of a suit. S. Appx. 25–28. According to the government, Mr. Williams's May 2022 letters were not "duly filed" because they did not comply with the IRS's requirements for refund claims, including that such claims be "presented . . . on [a] version of [ ] Form 1040." *Id.* The government also argued that, notwithstanding the "duly filed" requirement, all of Mr. Williams's claims were founded on allegations of tortious or criminal activity over which the Claims Court had no jurisdiction. S. Appx. 29–30.

The Claims Court granted the motion to dismiss on May 28, 2025. *Williams v. United States*, No. 1:24-cv-00413 (Fed. Cl. May 28, 2025), ECF No. 20 (*Dismissal*). The court determined that Mr. Williams "did not file valid administrative claims for refunds" at least because, as the complaint itself alleged, Mr. Williams "did not file Form 1040 . . . for 2006 or 2010." *Id.* at 2 (citing Complaint at 2). The court also observed that it "lacks jurisdiction over claims alleging criminal conduct" but that Mr. Williams's complaint "asserts several counts of fraud and other crimes." *Id.* at 1–2. Accordingly, it dismissed the complaint. *Id.* at 2.

Mr. Williams timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review without deference a dismissal for lack of subject-matter jurisdiction by the Claims Court where, as here, its decision did not turn on the resolution of any factual dispute. *Dixon v. United States*, 67 F.4th 1156, 1165 (Fed. Cir. 2023). We may affirm the judgment of the Claims Court on any ground supported by the record. *Wyandot Nation of Kansas v. United States*, 858 F.3d 1392, 1397 (Fed. Cir. 2017).

We address separately Mr. Williams's claim that he is entitled to a refund of the payments he made for tax years

2006 and 2010 and his various claims that the IRS engaged in fraudulent or criminal behavior in violation of the Internal Revenue Code, entitling him to damages under the IRS Reform Act. With respect to the refund claim, we affirm the Claims Court's dismissal because the complaint fails to state a claim upon which relief can be granted. With respect to the claims of tortious and criminal conduct, we affirm the dismissal for lack of subject-matter jurisdiction.

## A

Mr. Williams, in his opening brief to us, focuses on arguments that the IRS lacks legal authority to prepare a substitute Form 1040 for a person who has not filed a tax return and that the collection of tax was improper due to procedural defects, including the IRS's failure to update Mr. Williams's address of record to match his mailing address and its failure to send a notice of intent to levy to the correct address. Willams Informal Br. at 4–6; *see* Complaint at 2–4. He did not dispute (and does not dispute) that he had to satisfy the requirement of I.R.C. § 7422 (as a precondition to suing) that a refund claim be "duly filed" with the Secretary, evidently viewing his May 2022 letters as doing so. Williams Informal Br. at 6–7; *see also* Complaint at 3. But the government, in this court, argues that the complaint failed to satisfy the § 7422 requirement for reasons independent of Mr. Williams's substitute-return and address-related contentions, Government Informal Br. at 11, and we agree with the government that the case had to be dismissed for that reason.[4]

---

[4] In the Claims Court, the government argued for dismissal only based on lack of jurisdiction, *see* S. Appx. 2–3, 21, 24, but we have discretion to consider the argument, *see Dixon*, 67 F.4th at 1168, and we will do so because it presents a purely legal issue we may readily decide and Mr.

The Little Tucker Act grants the Claims Court jurisdiction, concurrent with the district courts, over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," as well as penalties and other sums wrongfully collected. 28 U.S.C. § 1346(a)(1). Section 7422 of the Internal Revenue Code limits such suits, however, by preventing them from being "maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary." I.R.C. § 7422(a). Timeliness is a requirement of being "duly" filed, *see* I.R.C. § 6511, and we have held that, under § 7422, the "fact of filing" a timely refund claim is jurisdictional, while the "adequacy of the filing" is not. *See Brown v. United States*, 22 F.4th 1008, 1011–12 (Fed. Cir. 2022); *Dixon*, 67 F.4th at 1161 & n.3. An adequate filing, though not a matter of jurisdiction, is necessary, and failure to meet the requirement is a ground for dismissal under Rule 12(b)(6). *See United States v. Dalm*, 494 U.S. 596, 601–02 (1960) ("[U]nless a claim for refund of a tax has been [timely] filed . . . a suit for refund . . . may not be maintained in any court."); *Computervision Corp. v. United States*, 445 F.3d 1355, 1363–64 (Fed. Cir. 2006); *Brown*, 22 F.4th at 1010, 1013 (affirming dismissal of refund claim because of failure to plead compliance with § 7422).

In applying § 7422, we have recognized a "substantial variance doctrine," *Computervision*, 445 F.3d at 1363–64, which "permits consideration of a claim for refund despite failure to timely file detailed formal claims with the IRS when a substantial variance from the requirements of [§ 7422 and its implementing] regulation is not involved[, but] this doctrine applies only in four limited situations," *id.* at 1364 (footnote omitted). In two of those situations,

---

Williams does not object to our consideration of the argument, *see* Williams Informal Reply Br. at 1–3.

there must be a technically compliant claim timely filed with the IRS—something that Mr. Williams's complaint itself establishes he did not do, because he never filed the required Form 1040 return for the years in question, Complaint at 2. *See* 26 C.F.R. §§ 301.6402-2(c) (requiring filing of claim on "form [ ] prescribed"), 301.6402-3(a)(1) (prescribing filing on "appropriate income tax return"). And, as explained next, Mr. Williams's case also does not involve either of the remaining two substantial-variance-doctrine situations.

One such situation involves the "waiver doctrine," which applies where a claimant has filed a noncompliant refund claim but the IRS has "seen fit to dispense with [the] formal requirements and to examine the merits of the claim." *Computervision*, 445 F.3d at 1366 (quoting *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297 (1945) (alteration in original)). Here, it is clear from the exhibits attached to Mr. Williams's operative complaint that the IRS did not examine the merits of his homemade "Demand Claim[s] for Refund[s]," but instead sought "more information" from Mr. Williams and insisted that he pursue his claims by "filing an original return" for each tax period. Complaint at Exs. 1–4. Although Mr. Williams's complaint characterizes the IRS's action as "disagreeing with the claims for refund" and "a final administrative determination adverse to [Mr. Williams]," *id.* at 3, those conclusory allegations, in light of the documents themselves, are implausible and insufficient to support the claim, *see id.* at Exs. 3–4; *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not accept as true allegations that contradict . . . [an] exhibit." (internal quotation marks and citation omitted)). Mr. Williams therefore finds no help in the waiver doctrine.

The final substantial-variance-doctrine situation involves the "informal claim doctrine," which applies when a "timely claim with purely formal defects . . . fairly apprises the IRS of the basis for the claim," *Computervision*, 445

F.3d at 1364, and is later "perfected" by an untimely but otherwise technically compliant filing, *Dixon*, 67 F.4th at 1168–70 (citing *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67–72 (1933), and *United States v. Kales*, 314 U.S. 186, 190–97 (1941)).  Because "[t]he informal claim doctrine is predicated on the expectation that any formal deficiency will at some point be corrected," thereby "giv[ing] the [g]overnment a full opportunity to address the problem [of alleged tax overpayment] administratively," *Greene-Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008), an informal claim has to be perfected "while the original claim is still being considered by the IRS," *Computervision*, 445 F.3d at 1371.  But filing suit for a refund on an unperfected informal claim removes the claim from the authority of the IRS, thereby thwarting the possibility of perfection. *Dixon*, 67 F.4th at 1169–70; *see Computervision*, 445 F.3d at 1364–65, 1371–72.  And that is what occurred here: Mr. Williams never filed compliant claims while the IRS was still considering the May 2022 letters, and once he filed suit it was too late.  Complaint at 2; *see Dixon*, 67 F.4th at 1169–70.

Mr. Williams identifies no other basis—and we are aware of none—for disregarding his noncompliance with § 7422 in assessing whether his complaint stated a refund claim.  His allegations of legal errors and procedural defects in the IRS's assessment and collection of tax, whatever their merits, are not relevant to the threshold question whether he has made out a claim under § 7422.  Based on the materials proper for consideration on a Rule 12(b)(6) motion to dismiss, we hold that he has not done so.  We therefore affirm the dismissal of the complaint to the extent it seeks a tax refund.

## B

As to Mr. Williams's claims for damages under the IRS Reform Act due to alleged fraud, deceit, criminality, and the like, we note, as did the Claims Court, that Tucker Act

jurisdiction is limited to "cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see Dismissal* at 1; *see also Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The [Claims C]ourt has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code[.]"). Moreover, jurisdiction to hear a taxpayer's claims for money damages owing to IRS violations of the Internal Revenue Code is "exclusive[ly]" in "district court," subject to exceptions not relevant here. I.R.C. §7433(a); *see id.* § 7432. Mr. Williams makes no argument on appeal that identifies a basis on which the Claims Court would have jurisdiction, whether through the Tucker Act or some other provision, to adjudicate his allegations of tortious or criminal behavior, and indeed he appears to agree that "those issues" should have been "dismissed." Williams Informal Reply Br. at 3. We thus affirm the Claims Court's dismissal of Mr. Williams's remaining claims for lack of subject-matter jurisdiction.[5]

### III

We have considered Mr. Williams's other arguments and find them unpersuasive. Accordingly, we affirm the Claims Court's judgment of dismissal.

The parties shall bear their own costs.

**AFFIRMED**

---

[5] Mr. Williams's briefing suggested an interest in transfer to the United States Tax Court, *e.g.*, Williams Informal Reply Br. at 3, but after we sought clarification, ECF No. 18, Mr. Williams stated that he "do[es] not seek a transfer," ECF No. 19 at 2. We therefore do not consider whether transfer is available or appropriate.